## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JOHN G. McMILLAN, | ) | Case No. 1:06CV00850 |
| | ) | |
| Claimant/Appellant, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| LTV STEEL COMPANY, INC., | ) | |
| | ) | |
| Debtor/Appellee. | ) | |

This matter is before the court on appeal of the Bankruptcy Court's January 6, 2006 order sustaining the objection of LTV Steel Company, Inc. ("Debtor" or "Appellee") to the administrative claim filed by John G. McMillan ("McMillan" or "Appellant"), as well as the Bankruptcy Court's March 7, 2006 order denying McMillan's motion for reconsideration of the January 6, 2006 order. The Court has jurisdiction pursuant to 28 U.S.C. § 158(a).

### I. Factual and Procedural Background

Appellant was employed by LTV Steel and its predecessor entities as an ironworker for more than thirty-one years. For the majority of his time as an employee of Debtor, Appellant was an hourly worker at Debtor's Cleveland Works West plant in Cleveland, Ohio ("Cleveland West"). (Record Tab 20T-1, ¶ 3.) At all times during his employment, Appellant was a member of a collective bargaining unit represented by the United Steelworkers of America AFL-CIO ("USWA" or the "Union"). (Record Tab 20T-1, ¶ 2.) As such, he was covered by the contract between Debtor and the USWA. (*Id.*)

Pursuant to an agreement between Debtor and the USWA, ratified by the USWA's membership on August 1, 1999, the parties agreed to restructure pension benefits for all qualified employees (the "1999 Settlement Agreement"). (Record Tab 20A-5.) The 1999 Settlement Agreement terminated LTV Steel's Defined Contribution Plan (the "DC Plan"), and transferred employees' DC Plan accounts and all DC Plan assets to a Defined Benefit Plan ("DB Plan"). (*Id*. at ¶ 5.) The 1999 Settlement Agreement also increased the total monthly pension benefits to be paid directly from the DB Plan and preserved the right of employees to receive a lump sum payment from the DB Plan upon retirement, subject to a $10,000 cap. (*Id*. at ¶ 2-5.)

On December 29, 2000, LTV Steel and forty-eight of its affiliates filed voluntary petitions for relief under chapter 11. The filing affiliates included LTV Corporation and Copperweld Corporation ("Copperweld"). LTV Corp. is the parent of both Debtor and Copperweld.

On April 16, 2001, Debtor issued a notice to the USWA of the planned closing or mass layoff at Cleveland West pursuant to the federal Worker Adjustment and Retraining Notification Act.  (Record Tab 20B.) *See* 29 U.S.C. § 2101 *et seq.*, (the "WARN Act"). The WARN Act requires certain employers, subject to certain exceptions, to provide sixty days advance written notice of a plant closing or mass layoff. 29 U.S.C. § 2102(a). Following the shutdown of Cleveland West, Appellant accepted work at other LTV facilities, including at least one assignment at a reduced pay rate, in order to avoid layoff. (Record Tab 20T-1, ¶ 3; 20CC.)

On July 30, 2001, the bankruptcy court approved a modified labor agreement ("MLA") between Debtor and the Union. (Record Tab 20I-4, ¶ 11.) The MLA, *inter alia*, rescinded the April 16, 2001 WARN notice. The MLA was ratified by the USWA's membership.

2

(Record Tab 20-7, ¶ EE.) Appellant's last day of work was August 25, 2001. (Record Tab 8 at 12.)

On or about November 16, 2001, Appellant and other employees of Debtor were notified of the planned permanent shutdown of Cleveland West. (Record Tab 20AA.) A memorandum distributed to the affected employees included an "Irrevocable Election Form." (*Id.*) The Irrevocable Election Form requested that employees select one of four options no later than November 23, 2001. (*Id.*) The options provided were as follows: (1) severance; (2) retirement with pension; (3) transfer; and, (4) remain on layoff.  (*Id.*)

In order to obtain approval of financing necessary to continue operations, Debtor needed to obtain additional concessions from the USWA. (Record Tab 20J-6-7, ¶ 13.) On November 19, 2001, Debtor's negotiations with the USWA broke down, and the Federal Loan Guarantee Board refused to grant preliminary approval of the proposed $250 million Byrd[1] Loan, which was to be guaranteed under the Federal Emergency Steel Loan Guarantee Program. (Record Tab 20J-11, ¶ 24.) As a result, Debtor issued a second WARN notice on November 20, 2001, advising the USWA of the complete cessation of all steelmaking operations and the permanent loss of all hourly jobs. (Record Tab 20C.) At the same time, Debtor filed a motion in bankruptcy court seeking approval of an Asset Protection Plan. (Record Tab 20J-12, ¶ 28.) The Asset Protection Plan provided for termination of all steelmaking operations, and sale of substantially all of Debtor's assets. The bankruptcy court approved the Asset Protection Plan on December 7, 2001.[2] Appellant elected to retire with pension benefits on December 11, 2001.[3]

---

[1] The legislation creating the Federal Emergency Steel Loan Guarantee Program was sponsored by West Virginia Senator Robert Byrd.

[2] Although the parties have included selected excerpts from a certified copy of the bankruptcy court docket, the order approving the Asset Protection Plan has not been included in the appellate record. No facts concerning the

Debtor's assets were sold pursuant to the Asset Protection Plan. The funds generated by the sale were sufficient to pay secured creditors in full, but were insufficient to pay the administrative claims against the estate. Because the estate is administratively insolvent, Debtor cannot confirm a plan of reorganization. *See* 11 U.S.C. § 1129(a)(9)(A)(full payment of administrative expenses is a prerequisite to confirmation).

Debtor and the USWA entered into an agreement on December 20, 2001, effective by its own terms on December 19, 2001, providing, *inter alia*, that "[t]he provisions on Severance Allowance…shall no longer be in effect for Employees at Basic Steel Facilities [defined to included the Cleveland West Works facility] as of the Effective Date of this Agreement." (Record Tab 20X-7, ¶ 6.n.)

In March 2002, following Debtor's default on its obligations under the DB Plan, the Pension Benefit Guaranty Corporation ("PBGC") terminated the DB Plan under the Employee Retirement Income Security Act. (Record Tab 20E.) As a result, the PBGC became the trustee of the DB Plan. (*Id.*) The unpaid pension benefits of Debtor's retirees, including Appellant, are now administered by the PBGC. (Record Tab 20F.)

---

Asset Protection Plan or the bankruptcy court's approval thereof are disputed.

[3] No document in the record directly evidences Appellant's election to retire on this date. Appellant cites to Record Tab 20-K, which is a copy of his proof of claim, No. 2670, filed December 3, 2002, asserting his entitlement to retiree benefits beginning on December 11, 2001. In addition, no explanation is offered for why Appellant waited until December 11 to elect one of the options under the Irrevocable Election Form, which included a November 23 deadline. In any event, Debtor appears not to dispute the date of Appellant's retirement, or that it was effective notwithstanding the delay.

4

On June 27, 2002, the USWA filed proof of claim number 989, along with a request for allowance of administrative expenses for approximately $1.5 billion on behalf of its membership, including Appellant.[4] (Record Tab 20G.) Included in this request were, *inter alia*, claims for severance and WARN Act liability. (*Id.*)

Appellant timely filed proof of claim number 2670 on December 3, 2002, asserting a general unsecured claim in the amount of $317,293.81[5] against Debtor and its affiliates, LTV Corporation and Copperweld. (Record Tab 20K.) The proof of claim asserts that $33,708.62 of this total is attributable to Appellant's DC Plan account.[6] (*Id.*) Debtors (including Debtor, LTV Corp., and Copperweld) objected to the claim on the ground that it was not properly asserted against LTV Corp. and Copperweld. (Record Tab 35.) The bankruptcy court sustained the objection on December 19, 2003. (Record Tab 30.) McMillan appealed this ruling. (Record Tab 29.) While the appeal was pending, McMillan entered into a settlement with Copperweld, whereby he received an allowed general unsecured claim in the amount of $312,643.81, and an allowed unsecured priority claim in the amount of $4,650 against the Copperweld estate (the "Copperweld Settlement"). (Record Tab 20R-2, ¶ 1.) The Copperweld Settlement further provides that payment of the claim would constitute "full satisfaction of any and all liabilities with respect to [Claim No. 2670], whether liquidated or contingent, including, but not limited to,

---

[4] The USWA's proof of claim states: "The USWA makes this Proof of Claim for Administrative Expenses on behalf of itself and present and former employees (and surviving spouses) of the Debtors for claims arising from the CBAs between the USWA and the Debtors."  (Record Tab 20G-2.)

[5] Note that the bankruptcy court's January 6, 2006 Memorandum Opinion and Order indicates the amount of Appellant's general unsecured claim as $37,293.81. Review of the proof of claim indicates that this is a typographical error, as the actual amount of the claim was $317,293.81.

[6] According to the documents filed with the proof of claim, McMillan asserts that his Defined Contribution Plan account had a balance of $43,708.62, and that upon his retirement he received $10,000, yielding the claim amount of $33,708.62.

wages, salaries, commissions, contributions to an employee benefit plan and damages for physical illness, pain and suffering." (Record Tab 20R-2, ¶ 3.) The order granting McMillan's motion to voluntarily dismiss his appeal, following the Copperweld Settlement, expressly provides: "The dismissal of the subject appeal, with prejudice, shall not affect in any manner Appellant's ability to seek relief against the LTV Steel Company, Inc." (Record Tab 20S.) Copperweld's plan of reorganization was confirmed on November 7, 2003. (Record Tab 31.)

On December 16, 2003, the bankruptcy court entered a stipulation and order agreed to by Debtor and the USWA regarding the USWA's claims (the "Stipulation and Order"). (Record Tab 20Q.) The Stipulation and Order provides that claim number 989 shall be allowed as an administrative expense in Debtor's estate in the amount of $15,000,000. (Record Tab 20Q-3, ¶ 1.) The Stipulation and Order provides for pro rata payments by Debtor on the $15,000,000 administrative claim to all former employees listed on Exhibit A to the Stipulation and Order. (*Id*. at ¶ 2.) Appellant is not listed on Exhibit A. The Stipulation and Order explains why:

> The list of Employees on Exhibit A was developed jointly by the USWA and LTV based on LTV employee lists and is believed by the parties to consist of all former hourly LTV Steel employees who were actively employed and working at certain of LTV Steel's facilities on November 20, 2001.  The list of Employees in the attached Exhibit A *excludes those on layoff from the Cleveland West operation* (on behalf of whom WARN notice was given at an earlier time) *and all other employees on layoff on or before November 20, 2001.*

[*Id*. (emphasis added).]

The Stipulation and Order contains a broad release of claims by the USWA:

> Through this Stipulation and Order, and except as provided in paragraph 1 above, the USWA irrevocably and unconditionally releases, acquits and forever discharges the LTV Parties and their respective directors, officers, executives, agents, employees, attorneys, professionals and representatives of any kind of and from any and all claims (including any proofs of claim or administrative claims asserted against any of the LTV parties' estates), charges, complaints, grievances,

6

liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorneys' fees and costs), and any causes of action of any kind or nature, known or unknown, foreseen or unforeseen, including, but not limited to, claims arising from any relationship, contract, agreement, contract or other connection between the USWA and the LTV Parties or their respective directors, officers, executives, agents, employees, attorneys, professionals or representatives of any kind, regardless of the date that such relationship, contract, agreement, contract or other connection was established; notwithstanding the above, the USWA retains the right to enforce this Stipulation in this Court and on appeal.

(Record Tab 20Q-5, ¶ 9.)

On July 28, 2004, Appellant filed a motion seeking leave to file an administrative expense claim against Debtor in the amount of $42,596.62. (Record Tab 26.) The motion was granted on September 1, 2004. (Record Tab 25.) McMillan filed the administrative claim on September 3, 2004. (Record Tab 24.) The claim is comprised of three components: (1) $33,708.62, which Appellant asserts represents the unpaid balance in his DC Plan account (the "DCP Component"); (2) $7,888 in severance benefits (the "Severance Component"); and, (3) $1,000 in back pay to which Appellant asserts entitlement under the WARN Act (the "WARN Component"). (Record Tab 26-2, n.1.) Appellant contends that each of these components is entitled to treatment as an administrative expense pursuant to 11 U.S.C. § 503(a).

Debtor filed an objection to the claim on November 17, 2004. (Record Tab 23.) The bankruptcy court sustained the objection in its Memorandum Opinion and Order dated January 6, 2006. (Record Tab 8.) In so doing, the bankruptcy court concluded that the DCP Component was released by the USWA's 1999 settlement with Debtor that transferred Appellant's DC Plan account to the DB Plan, which subsequently was taken over by the PBGC. (Record Tab 8-10 & 11.) Alternatively, the bankruptcy court concluded that the DCP

7

Component was included in the Copperweld Settlement, and was satisfied by payments made to Appellant pursuant to Copperweld's plan of reorganization. (Record Tab 8-11.) The bankruptcy court also found the DCP Component of Appellant's claim duplicative of his general unsecured claim and, therefore, barred by collateral estoppel. (Record Tab 8-13.) The bankruptcy court further concluded that both the Severance and WARN Components of Appellant's claim were released by the Stipulation and Order with the USWA, acting in its capacity as the exclusive bargaining agent for Appellant. (Record Tab 8-11 & 12.)

On January 17, 2006, McMillan filed a motion to amend and supplement finding and for reconsideration of the January 6 Order.  (Record Tab 6.)  The bankruptcy court treated the motion as one to alter or amend a judgment under Rule 59(e), and as a motion for reconsideration of the disallowance of a claim under 11 U.S.C. § 502(j).  (Record Tab 3.)  The bankruptcy court denied the motion in a Memorandum Opinion and Order dated March 7, 2006. (*Id*.)  It is from that order that McMillan now appeals.  (Docket No. 1.)

## II. Issues on Appeal

At issue in this case is whether the bankruptcy court erred in sustaining Debtor's objection to Appellant's administrative expense claim. Appellant assigns error to the bankruptcy court's determination that (1) the DCP Component of his claim was: (a) barred as duplicative of a portion of his general unsecured claim; (b) fully satisfied and dismissed with prejudice as a result of the Copperweld Settlement; and, (c) not entitled to administrative expense status; (2) the Severance Component was released pursuant to terms of the Stipulation and Order reached by Debtor and the USWA; and, (3) the WARN Component was also released by the Stipulation and Order. With respect to the DCP Component, Appellant also contends that the bankruptcy

8

court improperly failed to consider the fact that the balance in his DC Plan account "vested" prior to the 1999 Settlement Agreement, and failed to make specific findings regarding whether those funds were "already-earned" and "vested in a particular individual."

### III. Law and Analysis

A. Standard of Review

The bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *Brady-Morris v. Schilling (In re Knight Trust)*, 303 F.3d 671, 676 (6th Cir. 2002). Mixed questions of law and fact are to be "separated into their component parts and reviewed under the appropriate standard." *Mayor of Baltimore v. W. Va. (In re Eagle-Picher Indus., Inc.),* 285 F.3d 522, 527 (6th Cir.), *cert. denied*, 537 U.S. 880, 123 S. Ct. 90, 154 L.Ed.2d 137 (2002). A factual finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been committed. *Rogan v. Bank One N.A. (In re Cook)*, 457 F.3d 561, 565 (6th Cir. 2006). Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination. *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001). To the extent the bankruptcy court's opinion is based on stipulated facts, those facts are binding on this court. *See Varga v. Rockwell Int'l Corp.*, 242 F.3d 693, 699 (6th Cir. 2001).

A challenge to the bankruptcy court's denial of administrative expense priority status is reviewed for abuse of discretion. *Yenkin-Majestic Paint Corp. v. Wheeling-Pittsburgh Steel Corp. (In re Pittsburgh-Canfield Corp.)*, 309 B.R. 277, 281 (B.A.P. 6th Cir. 2004).

B. Merits

1. DCP Component

The bankruptcy court rejected Appellant's administrative expense claim regarding the DCP Component on several grounds.  Specifically, the bankruptcy court concluded that this portion of the claim was released pursuant to the terms of the 1999 Settlement Agreement.  In accordance with the 1999 Settlement Agreement, the DC Plan accounts were transferred to the DB Plan, and Appellant retained the right to receive a lump sum distribution upon his retirement. Thereafter, in 2002, PBGC assumed the administration of the DB Plan. Accordingly, under established law, Appellant's only recourse for such claims lies against the PBGC. *United Steelworkers of Am. v. United Eng'g*, 52 F.3d 1386, 1392 (6th Cir. 1995).

In asserting his objection, Appellant contends that, in negotiating the 1999 Settlement Agreement, the USWA only had authority to modify or eliminate his "non-vested" benefits on a prospective basis. Given this, Appellant further contends that the funds in his individual DC Plan account at the time of the 1999 Settlement Agreement already were "vested," and therefore could not be modified by the USWA. According to Appellant, because the USWA lacked authority to alter the vested portion of his DC Plan account, the transfer of those funds to the DB Plan pursuant to the 1999 Settlement Agreement was ineffective. Accordingly, Appellant argues, the PBGC's assumption of Debtor's obligations under the DB Plan had no effect on his entitlement to the funds vested in his DC Plan account prior to the 1999 Settlement Agreement.

In support of this position, Appellant cites *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Yard-Man*, 716 F.2d 1476 (6th Cir. 1983), *Anderson v. AT&T Corp.*, 147 F.3d 467 (6th Cir. 1998), *cert. denied*, 525 U.S. 1093, 119 S.Ct. 851, 142 L.Ed.2d 705 (1999), and *United Steelworkers of Am. AFL-CIO v. Cortland Container Corp.*, 105

10

B.R. 375 (N.D. Ohio 1989). These cases make clear that a union lacks authority to bargain away vested benefits of retirees.  *See also Williams v. WCI Steel Co., Inc.*, 170 F.3d 598, 605 (6th Cir. 1999). They do not, however, stand for the proposition that a union, representing an active worker – which Appellant indisputably was at the time of the 1999 Settlement Agreement – may not alter the active worker's pension benefits by agreement with the employer.

Appellant does not dispute that the USWA was authorized to bargain on his behalf. The USWA entered into the 1999 Settlement Agreement with Debtor, which modified the existing collective bargaining agreement ("CBA"). As a member of the USWA, which was party to the CBA and the 1999 Settlement Agreement, Appellant is bound by its terms. The 1999 Settlement Agreement transferred Appellant's DC Plan account to the DB Plan. That transfer effectively converted Appellant's DC Plan account into a DB Plan account. The 1999 Settlement Agreement provided Appellant with different and additional rights, and preserved the right to receive a lump sum payment of $10,000. Appellant has, in fact, accepted the $10,000 lump sum payment made pursuant to the DB Plan. (Record Tab 20K-3, ¶ 5.) In addition, Appellant receives monthly benefit payments pursuant to the DB Plan, which is now administered by the PBGC. (Record Tab 20K-2, ¶ 3.)

There is no authority to support Appellant's argument that he can now avoid the effect of the collectively bargained 1999 Settlement Agreement that transferred the funds in his DC Plan account to the DB Plan. While Appellant asserts repeatedly that the funds in his DC Plan account were "vested" prior to the 1999 Settlement Agreement, he cites no authority indicating that the vesting of funds in the pension account of an active employee prevents the consensual transfer of those funds to a different type of account.

Whatever the merits of Appellant's position regarding the effect of the 1999 Settlement Agreement on the funds in his DC Plan account, and whether or not those funds were "vested," in order to prevail on this appeal McMillan must prove that the DCP Component of his claim is entitled to treatment as an administrative expense under 11 U.S.C. § 503(b). The burden of proving entitlement to administrative priority is on the party asserting such status. *Woburn Associates. v. Kahn, (In re Hemingway Transport, Inc.)*, 954 F.2d 1 (1st Cir. 1992), *cert. denied sub nom.*, *Kahn v. Jupiter Development Corp.*, 510 U.S. 914, 114 S.Ct. 303, 126 L.Ed.2d 251 (1993); *In re Visi-Trak, Inc.*, 266 B.R. 372, 374 (Bankr. N.D. Ohio 2001). In general, for a debt to give rise to an administrative claim, "a claimant must prove that the debt (1) arose from a transaction with the debtor-in-possession as opposed to the preceding entity (or, alternatively, that the claimant gave consideration to the debtor-in-possession); and (2) directly and substantially benefitted [*sic*] the estate." *Employee Transfer Corp. v. Grigsby (In re White Motor Corp.)*, 831 F.2d 106, 110 (6th Cir. 1987). Since it exclusively relates to funds Appellant contends vested in his DC Plan account prior to the 1999 Settlement Agreement, the entire DCP component of his claim was earned and accrued pre-petition.

Appellant argues that the pre-petition nature of the DCP Component is not fatal to

12

his administrative claim because of the Supreme Court's decision in *Reading Co. v. Brown*, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968). In *Reading*, a case under the former Bankruptcy Act, the Court granted administrative priority for damages resulting from the post-petition negligence of a receiver in the absence of a meaningful benefit to the estate. 391 U.S. at 485. *Reading* does not, however, "eliminate the requirement that a debt arise post-petition in order to be accorded administrative expense priority." *Pension Benefit Guaranty Corp. v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.)*, 126 F.3d 811, 817 (6th Cir. 1997). As the Sixth Circuit stated: "To be sure, the *Reading* rationale allows administrative expense priority in the absence of a post-petition benefit to the estate. However, even in *Reading* and its progeny, the debt at issue arose post-petition." *Id*. Accordingly, the Sixth Circuit concluded that "it is an absolute requirement for administrative expense priority that the liability at issue arise post-petition." *Id*.

The other authorities cited by Appellant likewise offer no support for his argument that the DCP Component of his claim can be accorded administrative status even though it arose pre-petition. In *Oil, Chemical & Atomic Workers, AFL-CIO-CLC v. Hanlin Group, Inc. (In re Hanlin Group, Inc.)*, 176 B.R. 329, 334 (Bankr. D.N.J. 1995), the bankruptcy court held that back pay awarded for a post-petition WARN Act violation was entitled to administrative expense status. In *In re Wheeling-Pittsburgh Steel Co.*, 113 B.R. 187, 192 (Bankr. W.D. Pa. 1990), the bankruptcy court refused to grant administrative priority to a claimant's pre-petition back pay award, instead classifying the claim as general unsecured. Because both *Hanlin* and *Wheeling-Pittsburgh Steel* preserve the requirement that the debt arise post-petition, those cases actually support Debtor's position, not Appellant's.

13

The DCP Component of Appellant's claim unquestionably arose pre-petition. Accordingly, even if Appellant possessed a valid claim against Debtor based on the funds in his DC Plan account, such claim would not be entitled to status as an administrative expense. The bankruptcy court did not err in sustaining Debtor's objection to the DCP Component of Appellant's claim on that basis.

Inasmuch as disposition of this assignment of error, standing alone, disposes of Appellant's claim regarding the DCP Component, the Court finds it unnecessary to address Appellant's assignments of error regarding the bankruptcy court's alternative holdings with respect to the DCP Component.

2. Severance and WARN Components

Just as with the DCP Component, in order to prevail on appeal, Appellant must establish that the Severance and WARN Components of his claim are entitled to administrative priority. In contrast to the DCP Component, Appellant's contentions that claims for severance pay and WARN damages are entitled to administrative priority find some support in the law. *Straus-Duparquet, Inc. v. Local Union No.3 Int'l Bhd. of Elec. Workers (In re Straus-Duparquet, Inc.)*, 386 F.2d 649, 650-51 (2d Cir. 1967)(severance pay claimed under a collective bargaining agreement by employees terminated after commencement of chapter 11 proceedings is an administrative expense); *Hanlin*, 176 B.R. at 334 (back pay awarded for post-petition violation of WARN Act entitled to administrative priority); *In re Beverage Enters. Inc.*, 225 B.R. 111, 116 (Bankr. E.D. Pa. 1998)(same).[7] The bankruptcy court did not address this issue.[8] Instead, the

---

[7] The Court is not convinced that the Sixth Circuit would reach the same result as *Straus-Duparquet* or *Hanlin/Beverage Enters. See In re Cincinnati Cordage & Paper Co.*, 271 B.R. 264, 267 (Bankr. S.D. Ohio 2001)(severance benefits arising from pre-petition employment contracts did not qualify as administrative expense claims).  Because the Court resolves the Severance and WARN Components of the appeal on other grounds, the

bankruptcy court held that McMillan's rights to severance payments and WARN damages were extinguished by the Stipulation and Order.

Pursuant to the Stipulation and Order, the USWA received an allowed administrative claim in the amount of $15,000,000 against Debtor's estate in exchange for providing a broad release of all claims arising from any relationship between the USWA and the Debtor.  The unambiguous terms of the release provide:

> Through this Stipulation and Order…the USWA irrevocably and unconditionally releases, acquits and forever discharges the LTV Parties…from any and all claims (including any proofs of claim or administrative claims asserted against any of the LTV parties' estates…including, but not limited to, claims arising from any relationship, contract, agreement, contract or other connection between the USWA and the LTV Parties…regardless of the date that such relationship, contract, agreement, contract or other connection was established.

(Record Tab 20Q-5, ¶ 9.) Appellant received no distribution as a result of this settlement, because only those employees who remained on active employment as of November 20, 2001 were entitled to receive a distribution according to the terms of the Stipulation and Order. The bankruptcy court concluded that, because Appellant's last day was August 25, 2001, he was not actively employed on November 20, 2001, and therefore was not entitled to any distribution.

---

Court declines to decide whether such claims, if proven, would be entitled to payment as expenses of administration.

[8] The bankruptcy court did find that Appellant failed to sustain his burden of proving, under the standard articulated in *White Motor*, that he provided a direct and substantial benefit to the estate. The bankruptcy court did not, however, discuss cases such as *Straus-Duparquet* and *Hanlin*, which do not require proof of benefit to the estate in order to establish entitlement to administrative priority.

(Record Tab 8-12.) His claims for severance pay and WARN damages were, nevertheless, extinguished by the terms of the release provision included in the Stipulation and Order. (*Id.*)

Appellant does not contest the authority of the USWA to negotiate and settle claims on his behalf in the first instance. Instead, Appellant contends that the Stipulation and Order cannot bind him because he was not a party to it.  Notice of the Stipulation and Order was served only on those employees who received payment pursuant to its terms, and not on employees such as Appellant, who had performed post-petition work for Debtor but were not actively employed as of the effective date of the settlement. He asserts that the failure to provide notice of the settlement and an opportunity to object violated his due process rights. Accordingly, Appellant argues, the Stipulation and Order is invalid as to him, and cannot act as a bar to either the Severance or WARN Components of his claim.

In support of this argument, Appellant cites *In re Berkshire Foods, Inc.*, 302 B.R. 587 (Bankr. N.D. Ill. 2003).[9] In that case, the claimant filed a large administrative claim against the chapter 11 debtor. The debtor possibly had insurance coverage for the claim from a third party insurer. The debtor did not tender a demand for defense to the third party insurer, but instead reached a settlement with the claimant to allow the claim in its entirety, but limited claimant's ability to collect on its claim to the insurance proceeds. *Berkshire Foods*, 302 B.R. at 588. Debtor submitted a stipulated order to the bankruptcy court pursuant to its stipulation with

---

[9] *In re Skinner Group, Inc.*, 206 B.R. 252 (N.D. Ga. 1997), also cited by Appellant, is inapposite. *Skinner* involved a question over the adequacy of notice of a proposed class action settlement. In approving the notice procedure proposed by the parties, the court cited the notice provisions of Fed. R. Civ. P. 23, requiring notice to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise. The *Skinner* court also noted that the rationale for the inquiry into the adequacy of the representation prescribed by Fed. R. Civ. P. 23(a)(4) is the "basic principle that an individual not be bound by an *in personam* judgment from litigation in which he was not served with due process, unless his interests have been adequately represented by some proxy." *Skinner*, 206 B.R. at 259, n.7. The instant case differs from *Skinner*, and class actions generally, where the named plaintiffs and the absent class members bear no legal relationship. As Appellant's authorized agent and bargaining

16

the claimant, providing for a judgment in the amount of $859,494. *Id*. The third party insurer did not receive notice of the order or the underlying settlement. Based on the order, the claimant served a garnishment summons on the third party insurer to collect on its claim. The third party insurer moved for reconsideration of the order, and the bankruptcy court vacated the order and rescinded its approval of the settlement. *Id*. at 593. The bankruptcy court characterized the situation as

> an all too frequent effort in bankruptcy cases wherein parties "A" and "B" settle between them by taking something away from "C," sometimes attempted by overnight fax notice but here not accompanied by any notice at all. The Debtor and [claimant] denied [third party insurer's] due process rights to notice certainly required by U.S. Const. Amend. V as well as Rule 2002 Fed. R. Bankr. P.

*Id*. at 590.

Debtor concedes that Appellant did not receive personal notice of the Stipulation and Order, and further concedes that he was not entitled to any payment under its terms.  Debtor argues, however, that Appellant received notice as a matter of law because the USWA, his authorized collective bargaining agent, received actual notice. Appellant does not dispute the existence of the agency relationship between himself and the USWA. On the basis of this agency relationship, Debtor maintains that, using the analogy from *Berkshire Foods*, this case is distinguishable because here "B" (the USWA) was the authorized agent of "C" (McMillan), and therefore "B" had authority to bind "C" when negotiating with "A" (Debtor).

Appellant, as principal, "is chargeable with the knowledge of, or notice to, his agent that is received by the agent in the due course of his employment and is related to the matters within his authority." *Aetna Casualty and Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519,

---

representative, the USWA was just such a proxy, and the USWA did receive notice of the settlement.

17

541 (6th Cir. 2000). Appellant has not offered any authority suggesting that this doctrine does not apply where the agent is a union, nor is the Court aware of any. Although the Sixth Circuit has not considered this specific question, other courts of appeals have found notice to the union, rather than the individual employee, sufficient in other contexts. *See Mitchell v. Continental Airlines, Inc.*, 481 F.3d 225, 232 (5th Cir. 2007)(notice to union constituted adequate notice to employee and all similarly situated employees); *White v. White Rose Food*, 237 F.3d 174, 183 (2d Cir. 2001)(union representatives' consent to amendment to settlement agreement without providing notice and opportunity to object to rank-and-file members was not a breach of duty of fair representation where union constitution did not require ratification by rank-and-file); *Gragg v. U.S.*, 717 F.2d 1343 (Fed. Cir. 1983)(service upon employee's designated union representative sufficient to start running of statutory period for filing appeal). Accordingly, the Court finds that Appellant received adequate notice of the Stipulation and Order through the USWA as a matter of law and, therefore, his due process rights were not violated.

Appellant also contends on appeal that the USWA could not agree to release his ability to vindicate his statutory rights in a judicial forum absent a clear and unmistakable waiver.[10] In support of this argument, Appellant cites *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998) and *Kennedy v. Superior Printing Co.*, 215 F.3d 650 (6th Cir. 2000). Appellant raised this argument for the first time in his motion for reconsideration. A Rule 59(e) motion is not an opportunity to reargue a case, and it is improper to

---

[10] This argument pertains only to the WARN Component. Appellant does not have any statutory right to severance pay.  His claims for WARN damages do, however, arise under federal statute.

18

raise arguments that should have been raised before judgment. *Russell v. GTE Gov't Sys. Corp.*, 141 Fed. Appx. 429 (6th Cir. 2005); *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998).

Notwithstanding Appellant's belated attempt to inappropriately insert a new argument into the case, the Court finds the argument lacks merit. *Wright* and *Kennedy* stand for the proposition that a union lacks authority to waive an employee's statutory right to a judicial forum for federal employment discrimination claims absent a clear and unmistakable waiver of such claims in the relevant CBA. *See Wright*, 525 U.S. at 80; *Kennedy*, 215 F.3d at 654. Appellant has not asserted employment discrimination claims against Debtor. Acceptance of Appellant's contention would require a two step finding. First, the Court would have to find that Appellant has a statutory right to a judicial forum for claims under the federal WARN Act. Second, the Court would have to find that the principle announced in *Wright* extends to WARN claims, such that a union may not waive such rights absent a clear and unmistakable waiver in the CBA. The Court declines to take the second step.

Appellant cites no case extending this principle to WARN claims, nor is the Court, after an exhaustive search, aware of any. In *Wright*, an employee filed a discrimination suit against his employer under the Americans with Disabilities Act ("ADA"). 525 U.S. at 75. The district court dismissed the case without prejudice on the ground that the employee, a union member, had failed to pursue arbitration as provided for in the collective bargaining agreement, and the Fourth Circuit affirmed. *Id*. The Supreme Court reversed, finding that a general arbitration clause in the union-negotiated collective bargaining agreement could not constitute a waiver of employees' statutory right to a judicial forum for claims of employment discrimination

19

unless that waiver was clear and unmistakable. *Wright*, 525 U.S. at 80.  *Wright* does not address

the ability of a union, as agent for an employee, to negotiate a settlement of employee claims

against the employer; rather, it implicates the ability of an employer to compel arbitration of

discrimination claims based on a general arbitration clause, where the employee is otherwise

entitled to bring those claims in a judicial forum.

   The Court finds the former situation readily distinguishable from the latter. This

case does not involve a question of whether Appellant's claims were arbitrable. Debtor had no

contractual ability to compel Appellant or the USWA to arbitrate or settle the WARN claims.

Had the USWA so desired, it unquestionably could have brought the WARN claims in a judicial

forum.  Instead, exercising its business judgment, as the authorized bargaining representative for

its members, including Appellant, it negotiated a settlement of those and other claims against

Debtor.[11] The Court finds that neither *Wright*, nor the cases following it (including *Kennedy*),

supports an argument that the USWA lacked authority to settle such claims.

   The settlement entered into by the USWA on behalf of its members provided for

payment to some, but not all, of its members. In exchange, the USWA granted Debtor a release

that unquestionably encompasses employees' (including Appellant's) claims for severance pay

and WARN damages.  As the Supreme Court has stated:

> Congress did not intend judicial review of a union's performance to permit the
> court to substitute its own view of the proper bargain for that reached by the
> union. Rather, Congress envisioned the relationship between the courts and labor
> unions as similar to that between the courts and the legislature. Any substantive
> examination of a union's performance, therefore, must be highly deferential,

---

[11] Although Appellant does not challenge the reasonableness of the settlement (nor could he at this late juncture),
the Court notes that under the circumstances, given the extremely limited funds in the estate relative to the amount
of claims, the size of the potential WARN claims relative to the total amount of claims held by USWA members, the
fact that a *bona fide* dispute existed regarding Debtor's liability for WARN Act damages, and the costs associated
with protracted litigation, it was completely reasonable for the USWA to do so.

recognizing the wide latitude that negotiators need for the effective performance
of their bargaining responsibilities.

*Airline Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 78, 111 S.Ct. 1127, 1135, 113 L.Ed.2d 51

(1991). A union owes a duty of fair representation to its members, which it breaches if its

conduct is "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct.

903, 916, 17 L.Ed.2d 842 (1967). Appellant did not allege, either in the bankruptcy court or on

appeal, that the USWA breached its duty of fair representation. Having concluded that

Appellant, through his authorized agent, received adequate notice of the Stipulation and Order,

the Court finds that the bankruptcy court correctly held that the Stipulation and Order released

the Severance and WARN Components of Appellant's claim.

  3. Motion for Reconsideration

   McMillan also appealed the bankruptcy court's denial of his motion for

reconsideration. The bankruptcy court construed the motion as either a motion to alter or amend

a judgment under Rule 59(e), or a motion to reconsider disallowance of a claim.

   Denial of a motion to alter or amend a judgment is reviewed for abuse of

discretion, unless based on an erroneous legal doctrine, in which case review is *de novo*. *Huff v.*

*Metro Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982). A motion to alter or amend judgment

under Rule 59 may be granted only if there has been: "(1) a clear error of law; (2) newly

discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent

manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)(citation

omitted). Appellant's motion for reconsideration simply rehashed arguments initially made to the

bankruptcy court. Appellant did not point out any error of law or intervening change in

controlling law, did not present new evidence, and did not present any evidence establishing a "manifest injustice" done by the bankruptcy court's January 6, 2006 Order. The bankruptcy court properly denied that motion to alter or amend judgment.

The bankruptcy court exercises broad discretion in determining whether to reconsider disallowance of a claim pursuant to 11 U.S.C. § 502(j). *Colley v. Nat'l Bank of Texas (In re Colley),* 814 F.2d 1008, 1010 (5th Cir. 1987). Section 502(j) provides, in pertinent part: "A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." 11 U.S.C. § 502(j). In analyzing a motion under § 502(j), courts apply the standard for relief from judgment set forth in Fed. R. Bankr. P. 9024, incorporating Fed. R. Civ. P. 60. *In re Freightway Corp.*, 170 B.R. 108, 110 (Bankr. N.D. Ohio 1994). Rule 60 "allows relief from judgment only for clerical errors, mistake, surprise, excusable neglect, new evidence, fraud, voided judgment, satisfaction, or other extremely narrow circumstances. *Crown Service Plaza Partners v. City of Rochester Hills*, Nos. 98-1581, 98-1666, 2000 U.S. App. LEXIS 9935, at *3 (6th Cir. 2000). Denials of motions for relief under Rule 60 are reviewed for clear abuse of discretion. *Id*. In reviewing Appellant's motion for reconsideration, the bankruptcy court found that McMillan failed to offer new evidence or legal arguments, and received a full and fair opportunity to be heard. Accordingly, the bankruptcy court concluded that Appellant failed to show cause for reconsideration of its prior order disallowing his claim. This Court agrees that Appellant has failed to establish any of the bases for relief set forth in Rule 60. As such, the bankruptcy court did not abuse its discretion in refusing to grant relief under 11 U.S.C. § 502(j).

### IV. Conclusion

22

For the foregoing reasons, the order of the bankruptcy court sustaining Debtor's objection to Appellant's administrative expense claim is **AFFIRMED** and the bankruptcy court's denial of Appellant's motion for reconsideration is **AFFIRMED**.

**IT IS SO ORDERED**.


Dated: September 26, 2007                     *s/  Sara Lioi*
                                              **HONORABLE SARA LIOI**
                                              **UNITED STATES DISTRICT JUDGE**

23